# UNITED STATES DISTRICT COURT
## OFFICE OF THE CLERK
## DISTRICT OF KANSAS

259 ROBERT J. DOLE U.S. COURTHOUSE
500 STATE AVENUE
KANSAS CITY, KS 66101

**SKYLER B. O'HARA**
CLERK
E-MAIL: Skyler_OHara@ksd.uscourts.gov
(913) 735-2220

204 U.S.COURTHOUSE
401 N. MARKET
WICHITA, KS 67202

September 15, 2025

**STEPHANIE MICKELSEN**
CHIEF DEPUTY CLERK
E-MAIL: Stephanie_Mickelsen@ksd.uscourts.gov
(913) 735-2235

490 U.S.COURTHOUSE
444 NE QUINCY
TOPEKA, KS 66683

## INTERLOCUTORY

**SEE NOTICE OF ELECTRONIC FILING**

Retained Counsel Appeal

RE:  Schmidt v. Huff et al

District Court Case No.:    2:25-cv-02081-EFM-GEB

Notice of Appeal filed by:  Defendants Frank Bell, Ben Boothe, Greg Chapman, Brian Huff

Fee Status:    Paid

The following documents are for the parties in connection with the Notice of Appeal: Notice of Appeal and Copy of the Docket Sheet.

**RETAINED** Counsel for the appellant is instructed to download the "**Initial Appeal Documents and Instructions**" for this appeal from www.ca10.uscourts.gov. In addition, counsel will need to download the "Designation of Record" form from the Tenth Circuit website. Please follow the instructions for Transcript Order Form (for Appellant only) and Docketing Statement (for Appellant only) regarding Counsel's responsibility for compliance. For specific requirements concerning transcripts, records on appeal, briefs, and appendices to briefs, please refer to the Federal Rules of Appellate Procedure and the Rules of the Tenth Circuit Court of Appeals. Rules of the Tenth Circuit are available at www.ca10.uscourts.gov.

If you have any questions, please contact the Office of the Clerk of the U.S. Court of Appeals in Denver, Colorado at (303)844-3157.

Sincerely,
SKYLER B. O'HARA
CLERK OF COURT

By: _s/ J. Lolley_____
Deputy Clerk

Cc: Clerk, U.S. Court of Appeals
(Notice of Appeal, Docket Sheet, & Preliminary Record)

# U.S. District Court
# DISTRICT OF KANSAS (Kansas City)
# CIVIL DOCKET FOR CASE #: <u>2:25−cv−02081−EFM−GEB</u>

Schmidt v. Huff et al
Assigned to: District Judge Eric F. Melgren
Referred to: Magistrate Judge Gwynne E. Birzer
Cause: 42:1983 Civil Rights Act

Date Filed: 02/14/2025
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Carrie Schmidt**
*individually and as next friend of
minor*
K. S.
*minor*
P. S.

represented by **Linus L. Baker**
Linus L. Baker
6732 West 185th Terrace
Stillwell, KS 66085−8922
913−486−3913
Fax: 913−232−8734
Alternative Phone:
Cell Phone:
Email: linusbaker@prodigy.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 18197*
*Bar Status: Active*

V.

**Defendant**

**Brian Huff**
*in his individual capacity as
Superintendent of the Gardner Edgerton
Unified School District No. 231, Johnson
County, Kansas*

represented by **Gregory P. Goheen**
McAnany, Van Cleave & Phillips, PA –
KCK
10 E. Cambridge Circle Drive, Suite 300
Kansas City, KS 66103
913−371−3838
Fax: 913−371−4722
Alternative Phone:
Cell Phone:
Email: ggoheen@mvplaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16291*
*Bar Status: Active*

**Defendant**

**Gardner−Edgerton Unified School
District No. 231**
*Johnson County, Kansas*
TERMINATED: 08/14/2025

represented by **Gregory P. Goheen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16291*

1

*Bar Status: Active*

**Defendant**

**Greg Chapman**
*in his individual capacity as member of*
*the Board of Education the Gardner*
*Edgerton Unified School District No. 231,*
*Johnson County, Kansas*

represented by **Gregory P. Goheen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16291*
*Bar Status: Active*

**Defendant**

**Frank Bell**
*in his individual capacity as Principal for*
*the Gardner Edgerton Unified School*
*District No. 231, Johnson County, Kansas*

represented by **Gregory P. Goheen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16291*
*Bar Status: Active*

**Defendant**

**Ben Boothe**
*in his individual capacity as Assistant*
*Superintendent for the Gardner Edgerton*
*Unified School District No. 231, Johnson*
*County, Kansas*

represented by **Gregory P. Goheen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16291*
*Bar Status: Active*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 02/14/2025 | 1 | COMPLAINT with trial location of Kansas City (Filing fee $405, Internet Payment Receipt Number AKSDC–6585912.), filed by Carrie Schmidt. (Baker, Linus) (Entered: 02/14/2025) |
| 02/14/2025 | 2 | DESIGNATION OF PLACE OF TRIAL filed by Plaintiff Carrie Schmidt – trial to be held in Kansas City. (Baker, Linus) (Entered: 02/14/2025) |
| 02/14/2025 | 3 | CIVIL COVER SHEET by Plaintiff Carrie Schmidt. (Baker, Linus) (Entered: 02/14/2025) |
| 02/16/2025 | 4 | MOTION for Preliminary Injunction by Plaintiff Carrie Schmidt (Attachments: # 1 Exhibit A Ban Letter)(Baker, Linus) (Entered: 02/16/2025) |
| 02/16/2025 | 5 | MEMORANDUM IN SUPPORT of 4 Motion for Preliminary Injunction by Plaintiff Carrie Schmidt. (Attachments: # 1 Exhibit Combined policies, # 2 Exhibit Vollmecke rulings, # 3 Exhibit Pryor District court ruling)(Baker, Linus) (Entered: 02/16/2025) |
| 02/18/2025 | | NOTICE OF JUDGE ASSIGNMENT: Case assigned to District Judge Julie A. Robinson and Magistrate Judge Gwynne E. Birzer for all proceedings. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) |

2

| | | |
|---|---|---|
| | | **NOTICE OF MAGISTRATE JUDGE AVAILABILITY: A United States magistrate judge is available to conduct all proceedings in this civil action if all parties voluntarily consent. Information & consent forms are available at https://www.uscourts.gov/file/459/download (nac) (Entered: 02/18/2025)** |
| 02/18/2025 | 6 | ORDER REASSIGNING CASE: Case reassigned to Chief District Judge Eric F. Melgren for all further proceedings. District Judge Julie A. Robinson no longer assigned to case. Signed by District Judge Julie A. Robinson on 2/18/25. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(ss) (Entered: 02/18/2025) |
| 02/18/2025 | | SUMMONS ISSUED as to Frank Bell, Greg Chapman, Gardner–Edgerton Unified School District No. 231, Brian Huff. (Summonses issued to Attorney for service.) Notice, Consent, and Reference of a Civil Action to a Magistrate Judge Form provided to counsel for service with complaint. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (nac) (Entered: 02/20/2025) |
| 02/25/2025 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to 4 Motion for Preliminary Injunction. The motion will be resolved by the District Judge. (ccr)** (Entered: 02/25/2025) |
| 02/26/2025 | 7 | RETURN OF SERVICE of Summons and Complaint filed by Plaintiff Carrie Schmidt. (Baker, Linus) (Entered: 02/26/2025) |
| 02/27/2025 | | ALIAS SUMMONS ISSUED as to Frank Bell. (Summons issued to Attorney for service.) Notice, Consent, and Reference of a Civil Action to a Magistrate Judge Form provided to counsel for service with complaint. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jk) (Entered: 02/27/2025) |
| 02/28/2025 | 8 | ALIAS SUMMONS RETURNED EXECUTED –– Personal by Carrie Schmidt upon Frank Bell served on 2/27/2025, answer due 3/20/2025; Gardner–Edgerton Unified School District No. 231 served on 2/27/2025, answer due 3/20/2025. (Baker, Linus) (Entered: 02/28/2025) |
| 03/06/2025 | 9 | NOTICE of Hearing: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Preliminary/Permanent Injunction Hearing set for 3/21/2025 at 08:30 AM in KC Courtroom 440 before Chief District Judge Eric F. Melgren. (cm) (Entered: 03/06/2025) |
| 03/07/2025 | 10 | NOTICE of Hearing: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) Mailed to pro se party Brian Huff; Greg Chapman; Frank Bell; Gardner–Edgerton School District c/o Debra Starling by regular mail per addresses received from plaintiff's counsel. Preliminary/Permanent Injunction Hearing set for 3/20/2025 at 03:30 PM in Topeka Courtroom 403 before Chief District Judge Eric F. Melgren. (cm) (Entered: 03/07/2025) |
| 03/08/2025 | 11 | SUMMONS RETURNED EXECUTED –– Personal Service by Carrie Schmidt upon Greg Chapman served on 3/6/2025, answer due 3/27/2025; Brian Huff served on 3/6/2025, answer due 3/27/2025. (Baker, Linus) (Entered: 03/08/2025) |
| 03/18/2025 | 12 | NOTICE of Defense Counsel Representation by Carrie Schmidt. (Baker, Linus) (Entered: 03/18/2025) |
| 03/19/2025 | 13 | |

| | | CLERKS ORDER EXTENDING TIME until 4/3/2025 for Defendants Frank Bell, and Gardner–Edgerton Unified School District No. 231 to answer or otherwise plead. Signed by deputy clerk on 3/19/2025. (nac) (Entered: 03/19/2025) |
|---|---|---|
| 03/19/2025 | 14 | ENTRY OF APPEARANCE by Gregory P. Goheen on behalf of Frank Bell, Greg Chapman, Gardner–Edgerton Unified School District No. 231, Brian Huff. (Goheen, Gregory) (Entered: 03/19/2025) |
| 03/20/2025 | 15 | RESPONSE by Defendants Frank Bell, Greg Chapman, Gardner–Edgerton Unified School District No. 231, Brian Huff re 4 Motion for Preliminary Injunction. (Attachments: # 1 Exhibit 1)(Goheen, Gregory) (Entered: 03/20/2025) |
| 03/20/2025 | 16 | MINUTE ENTRY for proceedings held before Chief District Judge Eric F. Melgren: EVIDENTIARY HEARING held on 3/20/2025. (Court Reporter Annie States.) (Attachments: # 1 Exhibit List, # 2 Witness Sheet, # 3 Witness Sheet) (cm) Modified on 3/24/2025 to correct filing date and hearing date within docket text. (kas). (Entered: 03/21/2025) |
| 03/25/2025 | 17 | MEMORANDUM AND ORDER granting in part and denying in part 4 Motion for Preliminary Injunction. This Preliminary Injunction shall remain in effect pending trial in this action or further order of this Court. Signed by Chief District Judge Eric F. Melgren on 3/25/2025. (kas) (Entered: 03/25/2025) |
| 03/26/2025 | 18 | CLERKS ORDER EXTENDING TIME until 4/10/2025 for Defendants Greg Chapman and Brian Huff to answer or otherwise plead. Signed by deputy clerk on 3/26/2025. (nac) (Entered: 03/26/2025) |
| 03/28/2025 | 19 | MOTION to Disqualify Gregory Goheen by Plaintiff Carrie Schmidt. (Baker, Linus) (Entered: 03/28/2025) |
| 03/28/2025 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to 19 Motion to Disqualify Gregory Goheen. The motion will be resolved by the District Judge. (ccr)** (Entered: 03/28/2025) |
| 04/03/2025 | 20 | MOTION to Dismiss by Defendant Gardner–Edgerton Unified School District No. 231. (Goheen, Gregory) (Entered: 04/03/2025) |
| 04/03/2025 | 21 | MEMORANDUM IN SUPPORT of 20 Motion to Dismiss by Defendant Gardner–Edgerton Unified School District No. 231. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Goheen, Gregory) (Entered: 04/03/2025) |
| 04/03/2025 | 22 | MOTION to Dismiss by Defendant Frank Bell. (Goheen, Gregory) (Entered: 04/03/2025) |
| 04/03/2025 | 23 | MEMORANDUM IN SUPPORT of 22 Motion to Dismiss by Defendant Frank Bell. (Goheen, Gregory) (Entered: 04/03/2025) |
| 04/10/2025 | 24 | MOTION to Dismiss by Defendant Brian Huff. (Goheen, Gregory) (Entered: 04/10/2025) |
| 04/10/2025 | 25 | MEMORANDUM IN SUPPORT of 24 Motion to Dismiss by Defendant Brian Huff. (Goheen, Gregory) (Entered: 04/10/2025) |
| 04/10/2025 | 26 | MOTION to Dismiss by Defendant Greg Chapman. (Goheen, Gregory) (Entered: 04/10/2025) |
| 04/10/2025 | 27 | |

| | | MEMORANDUM IN SUPPORT of <u>26</u> Motion to Dismiss by Defendant Greg Chapman. (Goheen, Gregory) (Entered: 04/10/2025) |
|---|---|---|
| 04/11/2025 | <u>28</u> | RESPONSE by Defendants Frank Bell, Greg Chapman, Gardner–Edgerton Unified School District No. 231, Brian Huff re <u>19</u> Motion to Disqualify Counsel. (Goheen, Gregory) (Entered: 04/11/2025) |
| 04/14/2025 | <u>29</u> | AMENDED COMPLAINT against All Defendants, filed by Carrie Schmidt. (Baker, Linus) (Entered: 04/14/2025) |
| 04/14/2025 | <u>30</u> | REPLY TO RESPONSE TO MOTION by Plaintiff Carrie Schmidt re <u>19</u> Motion to Disqualify Gregory Goheen. (Baker, Linus) (Entered: 04/14/2025) |
| 04/14/2025 | | SUMMONS ISSUED as to Ben Boothe. (Summons issued to Attorney for service.) Notice, Consent, and Reference of a Civil Action to a Magistrate Judge Form provided to counsel for service with complaint. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (nac) (Entered: 04/14/2025) |
| 04/18/2025 | <u>31</u> | PARTIAL TRANSCRIPT of Preliminary Injunction Hearing held March, 20th, 2025, before Judge Eric F. Melgren, Court Reporter Annie States, 316–315–4334, annie_states@ksd.uscourts.gov. Transcript purchased by: Linus Baker.<br><br>**<span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.</span>**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 7/17/2025. (as) (Entered: 04/18/2025) |
| 04/18/2025 | <u>32</u> | TRANSCRIPT of Preliminary Injunction Hearing held March, 20th, 2025, before Judge Eric F. Melgren, Court Reporter Annie States, 316–315–4334, annie_states@ksd.uscourts.gov. Transcript purchased by: Gregory Goheen.<br><br>**<span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal data identifiers from the electronic transcript of the court proceeding. The policy is located on our website at www.ksd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.</span>**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 7/17/2025. (as) (Entered: 04/18/2025) |
| 04/28/2025 | <u>33</u> | MOTION to Dismiss Amended Complaint by Defendant Gardner–Edgerton Unified School District No. 231. (Goheen, Gregory) (Entered: 04/28/2025) |

| 04/28/2025 | 34 | MEMORANDUM IN SUPPORT of 33 Motion to Dismiss by Defendant Gardner–Edgerton Unified School District No. 231. (Attachments: # 1 Exhibit 1)(Goheen, Gregory) (Entered: 04/28/2025) |
| 04/28/2025 | 35 | MOTION to Dismiss Amended Complaint by Defendant Greg Chapman. (Goheen, Gregory) (Entered: 04/28/2025) |
| 04/28/2025 | 36 | MEMORANDUM IN SUPPORT of 35 Motion to Dismiss by Defendant Greg Chapman. (Goheen, Gregory) (Entered: 04/28/2025) |
| 04/28/2025 | 37 | MOTION to Dismiss Amended Complaint by Defendant Frank Bell. (Goheen, Gregory) (Entered: 04/28/2025) |
| 04/28/2025 | 38 | MEMORANDUM IN SUPPORT of 37 Motion to Dismiss by Defendant Frank Bell. (Goheen, Gregory) (Entered: 04/28/2025) |
| 04/28/2025 | 39 | MOTION to Dismiss Amended Complaint by Defendant Brian Huff. (Goheen, Gregory) (Entered: 04/28/2025) |
| 04/28/2025 | 40 | MEMORANDUM IN SUPPORT of 39 Motion to Dismiss by Defendant Brian Huff. (Goheen, Gregory) (Entered: 04/28/2025) |
| 04/29/2025 | 41 | MOTION for Stay by Defendants Frank Bell, Greg Chapman, Brian Huff. (Motion referred to Magistrate Judge Gwynne E. Birzer.) (Goheen, Gregory) (Entered: 04/29/2025) |
| 04/30/2025 | 42 | ORDER denying 41 Motion to Stay Case without prejudice as premature. While the majority of Defendants have plead in response to the Amended Complaint, Defendant Ben Boothe was issued a Summons on April 14, 2025 and has yet to provide an answer or otherwise respond. No proceedings are scheduled until after all Defendants have filed an answer or responsive pleading, so this Motion is premature. The Court will communicate with parties about how it will proceed with formal scheduling after all Defendants have entered and responded to the Amended Complaint. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 4/30/2025. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ccr) (Entered: 04/30/2025) |
| 05/05/2025 | 43 | OPPOSITION by Plaintiff Carrie Schmidt re 35 Motion to Dismiss. (Baker, Linus) (Entered: 05/05/2025) |
| 05/05/2025 | 44 | OPPOSITION by Plaintiff Carrie Schmidt re 39 Motion to Dismiss. (Baker, Linus) (Entered: 05/05/2025) |
| 05/06/2025 | 45 | OPPOSITION by Plaintiff Carrie Schmidt re 33 Motion to Dismiss. (Baker, Linus) (Entered: 05/06/2025) |
| 05/06/2025 | 46 | MOTION to Dismiss by Defendant Ben Boothe. (Goheen, Gregory) (Entered: 05/06/2025) |
| 05/06/2025 | 47 | MEMORANDUM IN SUPPORT of 46 Motion to Dismiss by Defendant Ben Boothe. (Goheen, Gregory) (Entered: 05/06/2025) |
| 05/07/2025 | 48 | OPPOSITION by Plaintiff Carrie Schmidt re 37 / 46 Motions to Dismiss. (Baker, Linus) (Entered: 05/07/2025) |
| 05/19/2025 | 49 | REPLY TO RESPONSE TO MOTION by Defendant Greg Chapman re 35 Motion to Dismiss. (Goheen, Gregory) (Entered: 05/19/2025) |

| 05/19/2025 | 50 | REPLY TO RESPONSE TO MOTION by Defendant Brian Huff re 39 Motion to Dismiss. (Goheen, Gregory) (Entered: 05/19/2025) |
|---|---|---|
| 05/20/2025 | 51 | REPLY TO RESPONSE TO MOTION by Defendant Gardner–Edgerton Unified School District No. 231 re 33 Motion to Dismiss. (Goheen, Gregory) (Entered: 05/20/2025) |
| 05/21/2025 | 52 | REPLY TO RESPONSE TO MOTION by Defendants Frank Bell, Ben Boothe re 37 / 46 Motions to Dismiss. (Goheen, Gregory) (Entered: 05/21/2025) |
| 06/05/2025 | 53 | ORDER finding as moot 20 Motion to Dismiss; finding as moot 22 Motion to Dismiss; finding as moot 24 Motion to Dismiss; finding as moot 26 Motion to Dismiss. Signed by Chief District Judge Eric F. Melgren on 6/5/2025. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (cm) (Entered: 06/05/2025) |
| 06/11/2025 | 54 | ORDER. The undersigned Magistrate Judge communicated with counsel, via letter dated May 19, 2025, regarding deferred scheduling in this case. Having received no response, the Rule 16 conference will be postponed until after the pending Motions to Dismiss (ECF Nos. 33, 35, 37, 39 and 46) have been decided by the District Judge. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 6/11/2025. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ccr) (Entered: 06/11/2025) |
| 08/14/2025 | 55 | MEMORANDUM AND ORDER granting 33 Gardner–Edgerton Unified School DistrictNo. 231's Motion to Dismiss; granting in part and denying in part 35 Greg Chapman's Motion to Dismiss; denying 37 Frank Bell's Motion to Dismiss; denying 39 Brian Huff's Motion to Dismiss; denying 46 Ben Boothe's Motion to Dismiss; denying 19 Plaintiff's Motion to Disqualify Attorney Greg Goheen. Signed by Chief District Judge Eric F. Melgren on 8/14/2025. (ca) (Entered: 08/14/2025) |
| 08/15/2025 | 56 | INITIAL ORDER REGARDING PLANNING AND SCHEDULING: Scheduling Conference set for 10/7/2025 at 11:00 AM by Telephone GEB – CONFERENCE NUMBER: 316–402–0044 Conference ID: 220 054 263 before Magistrate Judge Gwynne E. Birzer. Rule 26 Planning Conference Deadline 9/16/2025. Rule 26 Initial Disclosures Deadline set for 9/30/2025. Proposed Scheduling Order Deadline 9/30/2025. Signed by Magistrate Judge Gwynne E. Birzer on 8/15/2025. (ca) (Entered: 08/15/2025) |
| 08/28/2025 | 57 | ANSWER to 29 Amended Complaint by Frank Bell, Ben Boothe, Greg Chapman, Brian Huff.(Goheen, Gregory) (Entered: 08/28/2025) |
| 09/12/2025 | 58 | NOTICE OF INTERLOCUTORY APPEAL as to 55 Order on Motion to Dismiss,,,,,,,,,, Order on Motion to Disqualify Counsel, by Defendants Frank Bell, Ben Boothe, Greg Chapman, Brian Huff Filing fee $ 605, Internet Payment Receipt Number AKSDC–6771193. (Attachments: # 1 Memorandum and Order)(Goheen, Gregory) (Entered: 09/12/2025) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

CARRIE SCHMIDT,

                    *Plaintiff*,

      v.                                 Case No. 25-CV-2081-EFM-GEB

BRIAN HUFF, et al.,

                    *Defendant(s)*.

**MEMORANDUM AND ORDER**

Before the Court is a Motion to Disqualify defense counsel (Doc. 19). Additionally, several Motions to Dismiss have been brought by the following Defendants: Board of Education Member Greg Chapman (Doc. 35), Superintendent Brian Huff (Doc. 39), Assistant Superintendent Ben Boothe (Doc. 46), Principal Frank Bell (Doc. 37) (collectively, the "Individual Defendants"), and Gardner-Edgerton Unified School District No. 231 (the "District") (Doc. 33). The Individual Defendants seek dismissal on qualified immunity grounds. The District seeks dismissal, arguing that Plaintiff lacks standing, her claims are barred by the statute of limitations, and she fails to state a claim. For the reasons stated below, the Court grants in part and denies in part Chapman's Motion, denies the remaining Individual Defendants' Motions, and grants the District's Motion.

**I.      Factual and Procedural Background**

Gardner-Edgerton High School is a part of Unified School District No. 231 and is located in Johnson County, Kansas. The District's facilities serve not only as a school but also as a venue for members of the public to attend sporting events, school board meetings, and church services.

Plaintiff Carrie Schmidt is the mother of two students who attend Gardner-Edgerton High School. At the time Plaintiff filed suit, her daughter was a sophomore, and her son was a senior. Beginning in 2021, Plaintiff started appearing at District school board meetings. In 2022, Plaintiff started to speak at the meetings, reading aloud to the Board words, phrases, and descriptions contained in the District's educational curriculum and library.

On May 4, 2023, Plaintiff became a member of the District Educational Services Advisory Committee. The Committee investigates and reviews the District curriculum, instruction, and assessment topics, and it also examines the accreditation process, progress, curriculum standards, and federal programs. The Committee makes recommendations to the School Board and Superintendent Brian Huff about these matters.

On January 29, 2025, President Trump issued Executive Order 14190, entitled "Ending Radical Indoctrination in K-12 Schooling." Based on the advertisements, posters, and stickers placed on the walls and windows of certain classrooms in the District, Plaintiff believed that the school was in violation of the President's Executive Order by endorsing and otherwise advocating for gender ideology and discriminatory equity ideology.

A.      **The Board Meeting Incident**

At an August 2024 District school board meeting, Plaintiff was the only individual signed up to speak. Immediately after Board President Tom Reddin announced that it was time for "hearing and requests and suggestions" from the public, Defendant Gregg Chapman, a Board Member, interjected, asking Reddin if he could speak first. As Plaintiff was walking up to the microphone, Defendant Chapman started his pre-written speech. He said the following:

> I assume I know what the speaker is going to talk about . . . . Ms. Schmidt has made all kinds of allegations about our district and board of education. . . . She also has a misunderstanding of library books which are for enjoyment versus instructional materials, assigned books/materials. . . . It is entirely disingenuous to almost single-handedly bog down a transparent system with up to fourteen years' worth of

reviews and then shout from the podium that we are taking too long and not doing anything about it. . . .

I used to believe in the power of one voice, but this process has made it clear that one voice without understanding or discernment can cause more damage to a noble cause than an individual who just wants the issue resolved and working alongside the team.

It seems like she just gets pleasure from reading books with questionable content to this audience where there are minors listening. . . . it just feels like she wants the shock attention that is caused by reading the out of context sexual clips to the minors and adults in the audience. . . . [H]ow it's being handled is costing this community valuable time, effort and unfortunately valuable people who didn't cause the issue but have been drug through the mud by this continued and disingenuous rhetoric.

Members of the public who wish to speak during the "hearing and requests and suggestions" phase of the meeting are only allowed three minutes. Plaintiff had already prepared a three-minute speech that day, but after hearing Chapman's five-minute speech, she asked if she could respond. Chapman replied, "nope, you get your minutes." Thus, Plaintiff gave her pre-prepared three-minute speech. Like her speeches at previous Board Meetings, the content contained the language used in the books available at the District's library. Half-way through her speech, Reddin interrupted Plaintiff stating, "for anybody who has kids at home watching this, please pause it for a minute while she puts on her performance." The District added 15 seconds to Plaintiff's speech time for this interruption. However, throughout the duration of Plaintiff's speech, her microphone was muted until approximately the last 20 seconds of her speech.

Afterwards, Plaintiff approached Assistant Superintendent Ben Boothe and asked to repeat her speech so that viewers watching from home could hear it. Boothe denied the request, informing Plaintiff that the volume on the District's YouTube page would be increased and that viewers could instead read her remarks through closed captions. However, the District's YouTube page did not display closed captions for the portions of Plaintiff's speech during which the microphone had been muted.

**B.    The Social Media Incident**

At the time of filing, Plaintiff's son was on the Gardner-Edgerton wrestling team. Plaintiff volunteered to help make "snack bags" for the wrestlers on the days they have wrestling matches. With permission, Plaintiff used the teacher's lounge on the first floor to assemble the snack bags. Once prepared, the bags were placed in the wrestling team's coolers. Plaintiff frequently photographed the completed snack bags and sent the images to the coaches and Athletic Secretary to inform them of their location. This process predated Plaintiff's volunteer work, and Plaintiff assisted in preparing snack bags for the wrestling team since at least 2023.

On February 3, 2025, Plaintiff visited the high school in the evening to prepare snack bags for the next day. Plaintiff went to the teachers' lounge, made the snack bags, and prepared everything as usual. After she finished, Plaintiff went upstairs to the second floor and found the room number associated with a promotional poster for the Gay Straight Alliance Club. The classroom's lights were already on, and the door was open. Plaintiff took pictures of the classroom door, posters displayed on the classroom walls, and books stacked on the classroom bookshelves. The classroom door had multiple posters and stickers on it, including the teacher's last name.

"Libs of TikTok" is a popular social media account known for posting photos and videos of individuals or organizations that often express progressive or liberal views, especially those surrounding topics like LGBTQ+ rights, education, and identity. The account typically collects its content by browsing public posts on social media and reposting them, or by directly posting submissions from followers who send in content they believe aligns with the account's focus. Although named Libs of TikTok on all platforms, the account is active on multiple social media networks, including Instagram, X (formerly Twitter), Facebook, and TikTok.

Plaintiff sent the Libs of TikTok X account the pictures she took at the school. Plaintiff had no control over whether Libs of TikTok saw her photos, decided to post them, picked which ones

to post, or would notify her when it did post her photos. On February 7, 2025, at 10:26 a.m., Libs of TikTok posted the photo of the classroom door that Plaintiff had submitted. The post's caption read, "School in Gardner, Kansas (@GEHSBlazers) Strip them of their funding immediately."

That same afternoon, Plaintiff was at the high school making snack bags. While she was in the office, Superintendent Huff confronted Plaintiff about taking pictures and sending them to Libs of TikTok. Defendant Huff told Plaintiff that her actions disrupted the school day because the teacher whose name was posted on the classroom door was so distraught by the online comments that she asked to leave for the rest of the school day.

On February 11, 2025, Defendant Huff emailed Plaintiff a letter on official District letterhead (the "Letter"). The Letter stated the following:

> The purpose of this letter is to address certain actions taken by you in violation of Board policy and state law that have resulted in threats, intimidation, abuse and harassment directed at school district personnel and students which has caused a material disruption to the school environment. Specifically, during your visit to the high school on Monday February 3, 2025, you entered into and took several pictures of classrooms, offices and other areas in the school building to include a picture of the classroom door of a teacher, which was then posted on social media. The taking and posting of this picture was done without the permission and consent of the teacher or the school district and is in contravention of Board policies including Board Policy KGB,[1] KBC,[2] KGD,[3] KGDA,[4] KFD[5] & KM[6] and state law.
> . . . .
> [B]ased on your conduct, you are no longer to serve on the ED Services committee. In addition, for the balance of this school year (through June 30, 2025), you are no longer welcome to be on school district property or attend school events or activities without express written permission from building administration. Your presence on school district grounds or at school events or activities, both home and away,

---

[1] The District's Concealed Observations policy.

[2] The District's Media Relations policy.

[3] The District's Disruptive Acts at School or School Activities policy.

[4] The District's Public Conduct on School Property policy.

[5] The District's School Volunteers policy.

[6] The District's Visitors to the School policy.

without express written permission from building administration will be considered to be and enforced as a trespass.

That same day, Superintendent Huff instructed Assistant Superintendent Ben Boothe to contact the Gardner Police Department and file an incident report. The report detailed that Boothe "wished to trespass [Plaintiff] due to an incident on the evening February 3rd where she was observed walking through the school taking pictures of classrooms and entering some of the classrooms." Specifically, the incident involved "a photo shared of room 401 to a group called 'libs of tiktok' on 02/07/2025 at approximately 1026 hours." Boothe stated that Plaintiff "was on school video taking pictures of the outside of the door to room 401 then entered the room after taking the photo."

Boothe informed the officer that he would send Plaintiff a certified letter detailing her trespass from District property and providing the Gardner Police Department case number documenting the incident. The officer requested a copy of the Letter on February 13, 2025. The Letter was provided to the officer on February 20, 2025, which was uploaded into evidence.com along with the associated case number.

Principal Frank Bell was tasked with receiving Plaintiff's requests to be on school property or attend school events and determine whether they should be granted. Bell informed Plaintiff that she could attend her son's Senior Night at the high school on February 13, 2025. However, she was only allowed to access the "PE wing," as "all other parts of our building are off-limits." Beyond Senior Night, Bell informed Plaintiff that she was required to obtain permission from "GEHS building administration for permission to be anywhere on our campus."

When Plaintiff asked about whether she could attend her son's Graduation Commencement Ceremony, Bell responded, "I would hope that with time, you would demonstrate proper civic behavior to our high school community, and honor the expectations of the letter you received. I

made a good faith effort on your behalf, and advocated for you to be able to attend Thursday's

Senior Night without receiving a request directly from you." He added:

> Candidly, it will take some time and healthy civic behavior on your part, to earn
> the school's trust once again. Your recent choices have created a major disruption
> at Gardner-Edgerton High School. Regretfully, I read nothing in your email
> response that even acknowledged any of that, or that you had any remorse. Even
> so, our hope is that time and good behavior will heal what has been done, and we
> can enjoy a productive parent-school partnership for the betterment of all students.

When Plaintiff again asked about the graduation ceremony, Bell replied, "you do not have

our permission to attend any future GEHS functions, home or away, including our Graduation

Commencement Ceremony." Additionally, Bell informed Plaintiff that she must schedule and

attend all teacher conferences over Zoom or telephone.

## C.    Procedural History

On February 14, 2025, Plaintiff filed suit, asking this Court to enjoin Defendants from

prohibiting her from being on school property without prior written permission. On March 20,

2025, the Court held an evidentiary hearing on Plaintiff's request for a preliminary injunction. On

March 25, 2025, the Court generally granted her request, ordering the injunction to remain in effect

pending trial. On March 28, 2025, Plaintiff filed a Motion to Disqualify defense counsel, Greg

Goheen. The parties filed timely responses and replies. On April 14, 2025, Plaintiff filed her

Amended Complaint. On April 28, 2025, Defendants Chapman, Bell, Huff, and the District filed

Motions to Dismiss. On May 6, 2025, Defendant Boothe filed his Motion to Dismiss. The parties

filed timely responses and replies. The issues, being fully briefed, are now ripe for the Court's

ruling.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[7] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[8] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[9] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[10] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[11] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[12] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[13]

---

[7] Fed. R. Civ. P. 12(b)(6).

[8] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[10] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[11] *Iqbal*, 556 U.S. at 678–79.

[12] *See id.* at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[13] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

### III.    Analysis

**A.    The Individual Defendants**

The Individual Defendants contend that they are entitled to dismissal of all claims against them based on qualified immunity. Qualified immunity is a question of law for the Court's determination.[14] The doctrine shields government officials from personal liability under § 1983 "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"[15] To overcome qualified immunity, Plaintiff must overcome a "heavy two-part burden."[16] Plaintiff must show (1) "that the defendant's actions violated a constitutional or statutory right" and (2) that the right "allegedly violated [was] clearly established at the time of the conduct at issue."[17] The Court will evaluate each of the Individual Defendants' qualified immunity arguments in turn.

*1.    Defendant Chapman*

Defendant Chapman claims he is entitled to qualified immunity because his statements at the School Board Meeting constituted protected speech under the First Amendment and did not violate any clearly established constitutional right. Plaintiff opposes dismissal, contending that Chapman's statements made immediately before her public comments violated her clearly established First Amendment right to free speech by means of retaliation and viewpoint discrimination. The Court will address each in turn.

---

[14] *Mitchell v. Forsyth*, 472 U.S. 511, 528 n.9 (1985).

[15] *Baptiste v. JC Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[16] *Albright v. Rodriquez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

[17] *Id.*

a.        Retaliation

"To establish a First Amendment retaliation claim, a plaintiff must show that (1) [she] was engaged in constitutionally protected activity, (2) the government's actions caused [her] injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to [her] constitutionally protected conduct."[18] The first and third elements are undisputed. Plaintiff was about to speak at a school board meeting, which is constitutionally protected activity, and Chapman's preemptory comments were motivated by what he thought Plaintiff was going to say. Thus, the only issue the Court must resolve is the "injury" element.

To plausibly allege injury, plaintiff must plead that defendants' actions would chill a person of ordinary firmness.[19] This "standard for evaluating that chilling effect on speech is objective"[20] and "vigorous."[21] "Even in the context of a First Amendment retaliation case, injury to one's reputation is not enough to establish a chilling effect."[22] The Tenth Circuit has held that no injury occurs if a defendant's disparaging statement "carried no penalties."[23]

Plaintiff suffered no penalties for speaking at the board meeting such as a threat of violence, jail time, or a monetary fine.[24] Instead, she claims that when Chapman accused her of getting "pleasure from reading books with questionable content to . . . minors listening," she suffered

---

[18] *Nielander v. Bd. of Cnty. Comm'rs*, <u>582 F.3d 1155, 1165</u> (10th Cir. 2009) (citing *Worrell v. Henry*, <u>219 F.3d 1197, 1212</u> (10th Cir. 2000)).

[19] *Eaton v. Meneley*, <u>379 F.3d 949, 953</u> (10th Cir. 2004).

[20] *Id.* at 953.

[21] *Id.* at 956.

[22] *Douglass v. Garden City Cmty. Coll.*, <u>652 F. Supp. 3d 1329, 1349</u> (D. Kan. 2023) (citation modified).

[23] *Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trs.*, <u>235 F.3d 1243, 1248</u> (10th Cir. 2000); *see also Blume v. Meneley*, <u>283 F. Supp. 2d 1178, 1188</u> (D. Kan. 2003) (defamation insufficient to state retaliation claim under § 1983).

[24] *Cf. Moms for Liberty v. Brevard Pub. Sch.*, <u>118 F.4th 1324, 1330</u> (11th Cir. 2024).

-10-

slander, shame, and ridicule. If Chapman's statements only served to damage Plaintiff's reputation, then they are insufficient to establish an injury within the meaning of a First Amendment retaliation claim. As such, Chapman did not unconstitutionally retaliate against Plaintiff, and so the Court dismisses this claim against him.

        b.        Viewpoint Discrimination

Viewpoint discrimination is a subset—and a particularly "egregious form"—of content discrimination.[25] It occurs "[w]hen the government targets not subject matter, but particular views taken by speakers on a subject."[26] "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."[27] "Both content- and viewpoint-based speech restrictions are presumptively invalid."[28] "[A] claim of viewpoint discrimination in contravention of the First Amendment requires a plaintiff to show that the defendant acted with a viewpoint-discriminatory purpose."[29] When government officials target speech because of "particular views taken by speakers on a subject," viewpoint discrimination is afoot.[30]

Plaintiff claims that she was targeted by Chapman for reading parts of books contained in the District's curriculum, when others were not. Specifically, she names Erika Sheets, and other individuals associated with the activist group, Moms for Liberty, who have brought complaints before the Board without facing similar treatment. Plaintiff claims that she alone had her microphone muted during her speech, was denied the chance to repeat it after the Board restored

---

[25] *Rosenberger v. Rector & Visitors of Univ. of Va.*, <u>515 U.S. 819, 829</u> (1995).

[26] *Id.*

[27] *Id.*

[28] *Pahls v. Thomas*, <u>718 F.3d 1210, 1229</u> (10th Cir. 2013).

[29] *Id.* at 1230.

[30] *Rosenberger*, <u>515 U.S. at 829</u>.

her microphone, her speech was not closed-captioned on the Board's YouTube channel, and others were not subjected to similar targeted opposition without an opportunity to respond before giving their prepared remarks.

Moreover, Plaintiff claims that Chapman's comments and subsequent actions towards her clearly show that he was targeting her based on his opposition to her viewpoint. For example, Chapman prefaced his remarks with the assumption that he knew what Plaintiff would be talking about before characterizing her criticisms as being "entirely disingenuous," "without understanding or discernment," and "damag[ing]." Additionally, Chapman trivialized Plaintiff's concerns about the Board's book review process by accusing Plaintiff of getting "pleasure from reading books with questionable content to this audience where there are minors listening" and seeking the "shock attention that is caused by reading the out of context sexual clips to the minors and adults in the audience." Plaintiff claims that the proximity between Chapman's remarks and the subsequent silencing she experienced establishes that her opinion or perspective was the rationale for the restriction.

Taking the facts in Plaintiff's Complaint as true, the Court agrees that Chapman engaged in viewpoint discrimination against Plaintiff. Although Plaintiff was still able to speak for three minutes, her speech was rendered ineffective because it could not be heard by viewers. Plaintiff's microphone was muted, and closed captioning was unavailable on the District's YouTube page. Moreover, Chapman's remarks demonstrate that he disagreed with Plaintiff's views and, likely due to those views, he subjected Plaintiff to less favorable treatment than other speakers.

Viewpoint discrimination has been a clearly established constitutional violation in the Tenth Circuit for decades.[31] A reasonably competent public official should necessarily know that prefacing a speaker's speech with a pointed attack on her opinions and then muting her microphone throughout her designated speaking time is differential treatment amounting to a First Amendment violation. As such, Chapman is not entitled to qualified immunity, so the Court denies his Motion to Dismiss this claim against him.

### 2.    *Defendant Huff*

Defendant Huff claims he is entitled to qualified immunity because banning Plaintiff from school property without prior permission did not violate any clearly established constitutional right, as Plaintiff has no constitutional right to be on school property or attend school events. Plaintiff opposes dismissal, contending that Huff's actions violated her clearly established First Amendment right to free speech, association, and religion by means of retaliation. Huff's argument, although facially true,[32] misses the point. "Even if an official's action would be 'unexceptionable if taken on other grounds,' when retaliation against Constitutionally-protected speech is the but-for cause of that action, this retaliation is actionable and 'subject to recovery.'"[33] Here, the protected activity that supports Plaintiff's retaliation claim is exercising her First Amendment right to criticize the school's ideology—not a property interest in the school's facilities.

---

[31] *See Pahls*, 718 F.3d at 1230; *Summum v. City of Ogden*, 297 F.3d 995, 1007 (10th Cir. 2002); *Summum v. Callaghan*, 130 F.3d 906, 917 (10th Cir. 1997).

[32] *See Hirt v. Unified Sch. Dist. No. 287*, 2019 WL 1866321, at *10 (D. Kan. Apr. 24, 2019) (collecting cases), *aff'd sub nom.*, *Clark v. Unified Sch. Dist. No. 287*, 822 F. App'x 706 (10th Cir. 2020).

[33] *Howards v. McLaughlin*, 634 F.3d 1131, 1143 (10th Cir. 2011) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

Plaintiff took pictures of the classroom door, posters displayed on the classroom walls, and books stacked on the classroom bookshelves. Her photos were posted to the Libs of TikTok X account with the caption: "School in Gardner, Kansas (@GEHSBlazers) Strip them of their funding immediately." Libs of TikTok did not notify Plaintiff that it was going to post her photos, and did not consult Plaintiff on what to caption the photos. Thus, by banning Plaintiff from school property and events based on this X post, Huff not only banned Plaintiff for her own speech,[34] but also banned her for others' speech.[35] Following the ban notice, Huff instructed Boothe to file a police report and issue a no-trespassing order, which carried with it legal penalties. This measure constitutes an injury sufficient to chill a person of ordinary firmness from continuing to speak.[36]

Moreover, the ban was substantially motivated as a response to Plaintiff's speech. The Letter makes clear that Plaintiff's conduct—taking pictures later posted to social media—was the reason she was "no longer welcome to be on school district property or attend school events or activities without express written permission from building administration." Despite Huff's arguments that he never denied Plaintiff's request to attend an event, the fact that Plaintiff faced more administrative burdens than other parents because of her unpopular speech constitutes retaliation.

Lastly, the ban was overbroad and not narrowly tailored to address the specific "threat" Plaintiff posed. The ban effectively prevented Plaintiff from speaking at school board meetings,

---

[34] *See Cressman v. Thompson*, 798 F.3d 938, 954 (10th Cir. 2015) (finding that images may fall within the First Amendment's purview as symbolic speech).

[35] *Doe v. Shurtleff*, 628 F.3d 1217, 1222 (10th Cir. 2010) ("First Amendment protections for speech extend fully to communications made through the medium of the internet.") (citing *Reno v. ACLU*, 521 U.S. 844, 870 (1997)).

[36] *See Phelan*, 235 F.3d at 1248; *Hirt*, 2019 WL 1866321, at *15 (citing *Wilson v. Ne. Indep. Sch. Dist.*, 2015 WL 13716013, at *1 (W.D. Tex. Sept. 30, 2015)); *Flores v. Victory Preparatory Acad.*, 411 F. Supp. 3d 1149, 1160 (D. Colo. 2019); *Vollmecke v. Indep. Sch. Dist.*, 753 F. Supp. 3d 792, 809 (W.D. Mo. 2024); *Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1362 (N.D. Ga. 2022) (collecting cases).

associating with her children and other parents, and attending church services without express written permission from building administration because all these events were held on school property. Generally, incidental burdens on religious practices are constitutional if the regulation is neutral and generally applicable. However, as previously established, the ban was retaliatory—not neutral or generally applicable. But regardless of whether Plaintiff chose to participate in these publicly available activities or whether her requests to participate were granted, requiring her to seek permission, when others were not required to do so, imposes a burden substantially greater than necessary to further the government's interests. This is especially true when Huff has not identified a legitimate governmental interest. As this Court ruled in its last order for injunctive relief,[37] based on the plain language of the school policies cited to justify the ban, Plaintiff did not violate any of those policies. Additionally, even though Huff accused Plaintiff of violating state law, he did not cite any specific law in the Letter. Still, throughout this case, Huff has been unable to articulate how Plaintiff violated any state law. As such, Huff unconstitutionally retaliated against Plaintiff, and violated her First Amendment rights to speech, association, and religion in the process.

It has long been clearly established that the First Amendment bars retaliation for protected speech.[38] Huff banned Plaintiff because he believed her speech (and Libs of TikTok's speech) was "inappropriate, unacceptable[,] and [intolerable]." Finding images posted to a popular social media account offensive is an insufficient reason to strip Plaintiff of her rights to speak, associate, and exercise religion. It is unreasonable for a person acting as Huff did to believe that such conduct

---

[37] *See* Doc. 17.

[38] *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968).

did not infringe upon Plaintiff's First Amendment rights. As such, Huff is not entitled to qualified immunity, so the Court denies his Motion.

   *3.*  *Defendants Boothe & Bell*

   Defendants Boothe and Bell claim that they are entitled to qualified immunity because they neither imposed the ban nor denied Plaintiff's requests to be on school property, and they were not responsible for the allegedly unconstitutional school policies that were used to justify the ban. Plaintiff opposes dismissal, contending that Defendants Boothe and Bell were active decision makers in creating the school's policies and punishments that violated Plaintiff's constitutional rights. But even if they were not decision makers, Plaintiff contends that Defendants Boothe and Bell cannot escape liability by claiming they were merely following the school's orders.

    a.  Defendant Boothe

   Defendant Boothe is primarily alleged to have filed a police report, at Huff's direction, to enforce the no trespass order against Plaintiff. Based on the information Boothe provided to the officer in the police report, the Court concludes that Boothe assisted Huff in retaliating against Plaintiff due to her opposing viewpoint. Specifically, Boothe told the officer that "there was a photo shared of room 401 to a group called 'libs of tiktok' on 02/07/2025 at approximately 1026 hours." He stated Plaintiff "was on school video taking pictures of the outside of the door to room 401 then entered the room after taking the photo." Specifically, Boothe "wished to trespass [Plaintiff] from all USD231 properties due the incident and previous incidents involving [Plaintiff]." From this information, it is clear that Boothe's reason for filing a trespass report was substantially motivated as a response to Plaintiff's constitutionally protected speech. As previously stated, the legal penalties that flow from a violation such as trespass, constitute an action that would

chill a person of ordinary firmness from continuing to engage in that activity.[39] Therefore, because participation in retaliation is a clearly established constitutional violation, Boothe is not entitled to qualified immunity, so the Court denies his Motion.

      b.      Defendant Bell

Defendant Bell is primarily alleged to have been assigned the responsibility of receiving Plaintiff's requests to be on school property or attend school events and determine whether they should be granted. However, Bell's writings to Plaintiff demonstrate retaliation. For example, he reiterated that Plaintiff was "not to attend any events, home or away." He explained that this was because Plaintiff needed to "earn the school's trust once again." Specifically, Bell cited Plaintiff's "recent choices"—i.e., the Libs of TikTok incident—as having "created a major disruption at Gardner-Edgerton High School" that he hopes Plaintiff will acknowledge with remorse or at least "heal what has been done" through "time and good behavior." Following this conversation, Plaintiff asked if she could attend her son's Graduation Commencement Ceremony. Bell responded, "Regarding our Graduation Commencement Ceremony, I would hope that with time, you would demonstrate proper civic behavior to our high school community, and honor the expectations of the letter you received." When Plaintiff again asked about the graduation ceremony, Bell stated, "you do not have our permission to attend any future GEHS functions, home or away, including our Graduation Commencement Ceremony."

---

[39] *See Douglass*, 543 F. Supp. 3d at 1056; *McCook v. Springer Sch. Dist.*, 44 F. App'x 896, 905 (10th Cir. 2002) (finding a prohibition on attending any school functions or from trespassing onto any school property sufficiently chills a person of ordinary firmness from continuing to engage in protected speech); *see also Rinne v. Camden Cnty.*, 65 F.4th 378, 384 (8th Cir. 2023) ("We have distinguished between non-actionable retaliatory measures that produce only embarrassment, humiliation and emotional distress, and steps that engage the punitive machinery of government to impose concrete consequences in retaliation for speaking out against the government. A prohibition on entering county property is a concrete consequence that would objectively chill a person of ordinary firmness from criticizing county commissioners. Although the county did not prosecute [the plaintiff] for violating the ban, the prohibition itself and the threat of enforcement are sufficient to produce a chilling effect on speech." (citation modified)).

Bell's statements are a clear indication of retaliation. Plaintiff's, or rather Libs of TikTok's, social media post was constitutionally protected speech. Blanketly banning a parent from all school property and events—both home and away—absent approval from the school principal would chill a person of ordinary firmness from continuing to engage in that activity. This is especially true when the principal has denied the parent's request to attend important events in the life of her son, like graduation. Lastly, the ban on Plaintiff's ability to attend events was substantially motivated as a response to her speech. As such, because retaliation against Plaintiff for exercising her constitutional rights is a clearly established violation, Bell is not entitled to qualified immunity, so the Court denies his Motion.

## B.    Defendant Unified School District No. 231

The District seeks dismissal of Plaintiff's claims against it on three bases: (1) lack of standing, (2) barred by the statute of limitations, and (3) failure to state a claim. The Court will address each argument in turn.

### 1.    Lack of Standing

The District claims that Plaintiff lacks standing because she fails to plead any actual injury. It argues that either Plaintiff never sought permission to attend certain events or was granted permission for every event she requested. Thus, the District contends that Plaintiff was never actually deprived of her rights to associate with her children or other parents, exercise religion at church services held on school property, or speak at board meetings.

The Court disagrees with the District's argument. The District overlooks that standing does not require a plaintiff to have been wholly deprived of a right for all time;[40] rather, it requires a

---

[40] *West Virginia v. EPA*, 597 U.S. 697, 719 (2022); *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011).

concrete injury that is actual or imminent.[41] Plaintiff's injury was real and ongoing at the time she filed suit in January. At that point, she was under an active no-trespass directive that prohibited her from entering school property or attending events without prior written permission. The District's later decision to allow her to attend some events—especially after litigation began— does not erase the injury caused by the ban or render it constitutional.[42] Likewise, occasionally granting her permission did not eliminate the harm of the prior restraint, as she still had to seek approval each time when others similarly situated did not. Moreover, Plaintiff was able to attend events like her son's graduation in May because the Court enjoined the District from enforcing the ban for that event in March. There is no indication that the District would have accommodated Plaintiff's rights voluntarily; rather, without judicial intervention, Plaintiff likely would have been excluded from an event that other members of the public were not. As such, the Court rejects the District's standing argument.

### 2.    Statute of Limitations

Next, the District argues that any claim premised on events that occurred prior to February 14, 2023, are barred by the applicable statute of limitations. The Court agrees. Because § 1983 does not have a federal statute of limitations, the 2-year statute of limitations found at K.S.A. § 60-513(a)(4) applies to this lawsuit, which was commenced on February 14, 2025. However, the Court does not find that the single interaction mentioned in the Complaint between Plaintiff and Bell occurring on October 12, 2022, is foundational to any of Plaintiff's claims. If anything, their

---

[41] *Tarrant Reg'l Water Dist. v. Herrmann*, 656 F.3d 1222, 1248 (10th Cir. 2011) (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

[42] *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) ("[I]nterim developments that moot a claim for prospective relief do not necessarily moot a claim for damages. And the mootness of a plaintiff's claim for injunctive relief is not necessarily dispositive regarding the mootness of his claim for a declaratory judgment." (citation modified)).

-19-

interaction provided mere background information. But to the extent that Plaintiff does try to use this interaction to form the basis of some claim, it is barred by the statute of limitations.

    *3.    Failure to State a Claim*

    The District contends that Plaintiff has failed to state a claim for the following causes of action: (1) equal protection, (2) First Amendment violations, and (3) due process. The Court will address each in turn.

    a.    Equal Protection

    First, the District argues that Plaintiff does not assert a viable equal protection claim separate from her First Amendment claims. Plaintiff claims her equal protection rights have been violated by characterizing herself as a "class of one"—all other parents were permitted to attend their children's events without asking for permission, but she was not.

    When an individual faces retaliation, "the proper claim is not an equal protection claim brought in federal court, but a claim under the applicable anti-retaliation law brought in the forum designated to redress such harm."[43] Otherwise, "every claim of unlawful retaliation against a government [official], whether brought under state or federal law, could be transformed into an equal protection claim simply by defining the relevant class as consisting of those . . . who challenged the government's unlawful . . . policies."[44] Because Plaintiff's equal protection claim is duplicative of her First Amendment retaliation claim, the Court grants the District's Motion to Dismiss this claim against it.

---

[43] *Teigen v. Renfrow*, 511 F.3d 1072, 1086 (10th Cir. 2007).

[44] *Id.*

b.        First Amendment Violations

As a Kansas school district, the District seeks dismissal, arguing that it can only be held liable under § 1983 for policies or customs established by its final policymaker—the Board of Education. The District contends that because Plaintiff's claims are based solely on actions by individual employees or a single board member, and not on official board policies, it cannot be held liable for those claims. Plaintiff claims that the individuals who injured her were able to do so by enforcing unconstitutional District policies.

Under § 1983, municipalities, such as the District, may be subject to limited liability for a violation of a plaintiff's rights; this is commonly referred to as *Monell* liability. To state a claim for *Monell* liability, a plaintiff must allege three elements: "(1) an official policy or custom, (2) causation, and (3) deliberate indifference."[45] Here, the first two elements are undisputed. Huff used several official Board Policies—namely, KGB, KBC, KGD, KGDA, KFD, and KM—to justify retaliating against Plaintiff. Thus, the Court must resolve whether the Board, as the District's "final policy maker,"[46] acted with "deliberate indifference to the risk of constitutional violations."[47]

Neither party disputes the facial constitutionality of the Board Policies. Rather, the question before the Court is whether the Board can be held liable when its subordinates apply its policies in an unconstitutional manner. To impose liability, the plaintiff must meet "rigorous standards of culpability and causation . . . to ensure that the municipality is not held liable solely for the actions of its employee."[48] Specifically, the plaintiff must demonstrate that the policy was the "moving

---

[45] *Crowson v. Washington Cnty., Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020).

[46] *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 818 (10th Cir. 1990) ("[T]he board . . . is the final decisionmaking authority under state law.").

[47] *Bell v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 2004 WL 624972, at *12 (D. Kan. Mar. 29, 2004).

[48] *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997).

-21-

force" behind the constitutional violation.[49] This requires alleging that the school district had actual or constructive notice that its policy or its application was substantially certain to result in constitutional violations and consciously disregarded this risk.[50] Notice can be established through a pattern of similar constitutional violations or if the violation was a "highly predictable" or "plainly obvious" consequence of the policy's application.[51] However, isolated incidents of unconstitutional application, without evidence of a broader custom or deliberate indifference, are generally insufficient to establish liability.[52]

Here, Plaintiff has not alleged facts showing that it was "highly predictable" or "plainly obvious" that the Board's subordinates, such as the Superintendent or Principal, would apply its policies to Plaintiff in an unconstitutional manner. For instance, some of the policies cited by Huff dealt with requirements for visitors to wear badges, prohibitions on parents carrying firearms into school facilities, and banning bullying or threatening behavior while on school premises. In this case, none of these policies are even patently relevant to Plaintiff's conduct.[53] Instead, it seems like the school officials selected these policies merely as a pretext to retaliate against Plaintiff, rather than based on any legitimate conduct violating those rules. Moreover, Plaintiff has not cited a pattern of similar constitutional violations that should have put the Board on notice. Thus, given that such a grave misapplication of these policies is not something the Board could have

---

[49] *Id.* at 404.

[50] *Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022).

[51] *Id.* (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).

[52] *Medcalf v. Kansas*, 626 F. Supp. 1179, 1191 (D. Kan. 1986) (citing *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977)); *see also Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994) ("[I]solated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference.").

[53] Even if Plaintiff's Libs of Tiktok incident could somehow constitute bullying, it did not occur on school property.

anticipated, the Court finds that the Board was not deliberately indifferent. As such, the District is not liable to Plaintiff for her First Amendment violations, so the Court dismisses these claims against it.

        c.      Due Process

Next, the District seeks dismissal of Plaintiff's due process claim, arguing that she failed to allege a constitutionally protected liberty or property interest that was deprived by governmental action. Plaintiff claims that her freedom of speech is a protected liberty interest and depriving her of a hearing, or the ability to appeal the decision, violated her due process rights. Again, Plaintiff can properly state a claim for *Monell* liability by alleging three elements: "(1) an official policy or custom, (2) causation, and (3) deliberate indifference."[54]

Despite the District's assertions, nothing in K.S.A. § 72-1138 provides for a formal review process—and asserting that it does is disingenuous. However, the District does provide a district-wide policy or custom that facially appears to provide an appeal process, although it provides conflicting information. This takes the form of a chart outlining the hierarchy for parental complaints. The chart identifies the Board of Education President as the ultimate authority, but the accompanying text directs parents to "call or write the Superintendent, Dr. Brian Huff" as the final authority. Clearly, enacting a policy that requires Plaintiff to appeal to the same official who imposed the alleged constitutional deprivation deprives her of due process. Thus, the only question before this Court is whether Plaintiff alleges that the District acted with "deliberate indifference to the risk of constitutional violations."

Plaintiff has not alleged that the District, when adopting its complaint and appeal policies, anticipated, and much less intended, that the very officials entrusted with handling parental

---

[54] *Crowson*, 983 F.3d at 1184.

concerns—such as the Superintendent or Principal—would themselves violate a parent's constitutional rights. Deliberate indifference requires more than mere negligence or poor policy drafting; rather, it requires knowledge of a substantial risk of constitutional violations coupled with a failure to take reasonable measures to prevent them.[55] Although in hindsight the District's complaint and appeal policies could have accounted for more effective safeguards, they nonetheless established a centralized process for addressing parental concerns.[56] In this case, failing to account for the possibility that those charged with enforcing policies would simultaneously be the source of constitutional harm does not amount to deliberate indifference. As such, the Court dismisses Plaintiff's due process claims against the District.

## C.     Motion to Disqualify

Plaintiff asks the Court to disqualify Defendants' attorney, Greg Goheen, alleging that he was either part of the investigation, a decision maker, or a business consultant who had personal relationships with key decision makers in which he could observe, direct, and guide, how Superintendent Huff would violate Plaintiff's constitutional rights. Plaintiff claims that Kansas Rule of Professional Conduct 3.7 disqualifies Mr. Goheen from participating in this case during trial but also prior to trial. The Court disagrees. Rule 3.7 specifically prohibits lawyers from acting as an advocate *at trial*. This case is in the preliminary stages, and discovery has not yet commenced. Without further discovery, it is unclear whether Defendant Huff's communications with counsel will be relevant or admissible at trial, or whether Mr. Goheen will be called as a

---

[55] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) ("The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm" (further quotations omitted)).

[56] *Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1122 (10th Cir. 2008) (citing *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 174 (1st Cir. 2007) ("In hindsight, there may be other and better avenues that the [district] could have explored . . . [b]ut [the law] does not require . . . perfect solutions.").

witness by either party in connection with those communications. In sum, Plaintiff's Motion is, at best, premature. For this reason, the Court denies her motion without prejudice, and she may refile closer to trial.

**IT IS THEREFORE ORDERED** that Defendant Greg Chapman's Motion to Dismiss (Doc. 35) is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Defendant Brian Huff's Motion to Dismiss (Doc. 39) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Ben Boothe's Motion to Dismiss (Doc. 46) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Frank Bell's Motion to Dismiss (Doc. 37) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Gardner-Edgerton Unified School District No. 231's Motion to Dismiss (Doc. 33) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Disqualify Greg Goheen (Doc. 19) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 14th day of August, 2025.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **CARRIE SCHMIDT**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 25-2081-EFM-GEB** |
| **v.** | ) | |
| | ) | |
| **BRIAN HUFF, in his individual capacity** | ) | |
| **As Superintendent of Schools for Gardner** | ) | |
| **Edgerton USD 231 School District**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>NOTICE OF APPEAL</u>**

**NOTICE** is hereby given that Defendants Brian Huff, Greg Chapman, Frank Bell and Ben

Boothe ("hereinafter Defendants") hereby appeal to the United States Court of Appeals for the

Tenth Circuit from the Memorandum and Order entered in this action on August 14, 2025 (ECF

No. 55) wherein the Defendants' Motions to Dismiss premised on qualified immunity were denied.

Respectfully submitted,

McANANY, VAN CLEAVE & PHILLIPS, P.A.
10 E. Cambridge Circle Drive, 300
Kansas City, Kansas  66103
Telephone:    (913) 371-3838
Facsimile:    (913) 371-4722
E-mail:       ggoheen@mvplaw.com

By:  /s/ Gregory P. Goheen
        Gregory P. Goheen            #16291

Attorneys for Defendants Brian Huff, Greg Chapman, Frank
Bell and Ben Boothe

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of September, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Linus L. Baker
6732 West 185th Terrace
Stillwell, KS 66085-8922
Counsel for Plaintiff

/s/ Gregory P. Goheen

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARRIE SCHMIDT,

       *Plaintiff*,

v.

                                Case No. 25-CV-2081-EFM-GEB

BRIAN HUFF, et al.,

       *Defendant(s)*.

## MEMORANDUM AND ORDER

Before the Court is a Motion to Disqualify defense counsel (Doc. 19). Additionally, several Motions to Dismiss have been brought by the following Defendants: Board of Education Member Greg Chapman (Doc. 35), Superintendent Brian Huff (Doc. 39), Assistant Superintendent Ben Boothe (Doc. 46), Principal Frank Bell (Doc. 37) (collectively, the "Individual Defendants"), and Gardner-Edgerton Unified School District No. 231 (the "District") (Doc. 33). The Individual Defendants seek dismissal on qualified immunity grounds. The District seeks dismissal, arguing that Plaintiff lacks standing, her claims are barred by the statute of limitations, and she fails to state a claim. For the reasons stated below, the Court grants in part and denies in part Chapman's Motion, denies the remaining Individual Defendants' Motions, and grants the District's Motion.

## I.      Factual and Procedural Background

Gardner-Edgerton High School is a part of Unified School District No. 231 and is located in Johnson County, Kansas. The District's facilities serve not only as a school but also as a venue for members of the public to attend sporting events, school board meetings, and church services.

Plaintiff Carrie Schmidt is the mother of two students who attend Gardner-Edgerton High School. At the time Plaintiff filed suit, her daughter was a sophomore, and her son was a senior. Beginning in 2021, Plaintiff started appearing at District school board meetings. In 2022, Plaintiff started to speak at the meetings, reading aloud to the Board words, phrases, and descriptions contained in the District's educational curriculum and library.

On May 4, 2023, Plaintiff became a member of the District Educational Services Advisory Committee. The Committee investigates and reviews the District curriculum, instruction, and assessment topics, and it also examines the accreditation process, progress, curriculum standards, and federal programs. The Committee makes recommendations to the School Board and Superintendent Brian Huff about these matters.

On January 29, 2025, President Trump issued Executive Order 14190, entitled "Ending Radical Indoctrination in K-12 Schooling." Based on the advertisements, posters, and stickers placed on the walls and windows of certain classrooms in the District, Plaintiff believed that the school was in violation of the President's Executive Order by endorsing and otherwise advocating for gender ideology and discriminatory equity ideology.

## A.     The Board Meeting Incident

At an August 2024 District school board meeting, Plaintiff was the only individual signed up to speak. Immediately after Board President Tom Reddin announced that it was time for "hearing and requests and suggestions" from the public, Defendant Gregg Chapman, a Board Member, interjected, asking Reddin if he could speak first. As Plaintiff was walking up to the microphone, Defendant Chapman started his pre-written speech. He said the following:

> I assume I know what the speaker is going to talk about . . . . Ms. Schmidt has made all kinds of allegations about our district and board of education. . . . She also has a misunderstanding of library books which are for enjoyment versus instructional materials, assigned books/materials. . . . It is entirely disingenuous to almost single-handedly bog down a transparent system with up to fourteen years' worth of

reviews and then shout from the podium that we are taking too long and not doing anything about it. . . .

I used to believe in the power of one voice, but this process has made it clear that one voice without understanding or discernment can cause more damage to a noble cause than an individual who just wants the issue resolved and working alongside the team.

It seems like she just gets pleasure from reading books with questionable content to this audience where there are minors listening. . . . it just feels like she wants the shock attention that is caused by reading the out of context sexual clips to the minors and adults in the audience. . . . [H]ow it's being handled is costing this community valuable time, effort and unfortunately valuable people who didn't cause the issue but have been drug through the mud by this continued and disingenuous rhetoric.

Members of the public who wish to speak during the "hearing and requests and suggestions" phase of the meeting are only allowed three minutes. Plaintiff had already prepared a three-minute speech that day, but after hearing Chapman's five-minute speech, she asked if she could respond. Chapman replied, "nope, you get your minutes." Thus, Plaintiff gave her pre-prepared three-minute speech. Like her speeches at previous Board Meetings, the content contained the language used in the books available at the District's library. Half-way through her speech, Reddin interrupted Plaintiff stating, "for anybody who has kids at home watching this, please pause it for a minute while she puts on her performance." The District added 15 seconds to Plaintiff's speech time for this interruption. However, throughout the duration of Plaintiff's speech, her microphone was muted until approximately the last 20 seconds of her speech.

Afterwards, Plaintiff approached Assistant Superintendent Ben Boothe and asked to repeat her speech so that viewers watching from home could hear it. Boothe denied the request, informing Plaintiff that the volume on the District's YouTube page would be increased and that viewers could instead read her remarks through closed captions. However, the District's YouTube page did not display closed captions for the portions of Plaintiff's speech during which the microphone had been muted.

-3-

## B.    The Social Media Incident

At the time of filing, Plaintiff's son was on the Gardner-Edgerton wrestling team. Plaintiff volunteered to help make "snack bags" for the wrestlers on the days they have wrestling matches. With permission, Plaintiff used the teacher's lounge on the first floor to assemble the snack bags. Once prepared, the bags were placed in the wrestling team's coolers. Plaintiff frequently photographed the completed snack bags and sent the images to the coaches and Athletic Secretary to inform them of their location. This process predated Plaintiff's volunteer work, and Plaintiff assisted in preparing snack bags for the wrestling team since at least 2023.

On February 3, 2025, Plaintiff visited the high school in the evening to prepare snack bags for the next day. Plaintiff went to the teachers' lounge, made the snack bags, and prepared everything as usual. After she finished, Plaintiff went upstairs to the second floor and found the room number associated with a promotional poster for the Gay Straight Alliance Club. The classroom's lights were already on, and the door was open. Plaintiff took pictures of the classroom door, posters displayed on the classroom walls, and books stacked on the classroom bookshelves. The classroom door had multiple posters and stickers on it, including the teacher's last name.

"Libs of TikTok" is a popular social media account known for posting photos and videos of individuals or organizations that often express progressive or liberal views, especially those surrounding topics like LGBTQ+ rights, education, and identity. The account typically collects its content by browsing public posts on social media and reposting them, or by directly posting submissions from followers who send in content they believe aligns with the account's focus. Although named Libs of TikTok on all platforms, the account is active on multiple social media networks, including Instagram, X (formerly Twitter), Facebook, and TikTok.

Plaintiff sent the Libs of TikTok X account the pictures she took at the school. Plaintiff had no control over whether Libs of TikTok saw her photos, decided to post them, picked which ones

-4-

to post, or would notify her when it did post her photos. On February 7, 2025, at 10:26 a.m., Libs of TikTok posted the photo of the classroom door that Plaintiff had submitted. The post's caption read, "School in Gardner, Kansas (@GEHSBlazers) Strip them of their funding immediately."

That same afternoon, Plaintiff was at the high school making snack bags. While she was in the office, Superintendent Huff confronted Plaintiff about taking pictures and sending them to Libs of TikTok. Defendant Huff told Plaintiff that her actions disrupted the school day because the teacher whose name was posted on the classroom door was so distraught by the online comments that she asked to leave for the rest of the school day.

On February 11, 2025, Defendant Huff emailed Plaintiff a letter on official District letterhead (the "Letter"). The Letter stated the following:

> The purpose of this letter is to address certain actions taken by you in violation of Board policy and state law that have resulted in threats, intimidation, abuse and harassment directed at school district personnel and students which has caused a material disruption to the school environment. Specifically, during your visit to the high school on Monday February 3, 2025, you entered into and took several pictures of classrooms, offices and other areas in the school building to include a picture of the classroom door of a teacher, which was then posted on social media. The taking and posting of this picture was done without the permission and consent of the teacher or the school district and is in contravention of Board policies including Board Policy KGB,[1] KBC,[2] KGD,[3] KGDA,[4] KFD[5] & KM[6] and state law.
> . . . .
> [B]ased on your conduct, you are no longer to serve on the ED Services committee. In addition, for the balance of this school year (through June 30, 2025), you are no longer welcome to be on school district property or attend school events or activities without express written permission from building administration. Your presence on school district grounds or at school events or activities, both home and away,

---

[1] The District's Concealed Observations policy.

[2] The District's Media Relations policy.

[3] The District's Disruptive Acts at School or School Activities policy.

[4] The District's Public Conduct on School Property policy.

[5] The District's School Volunteers policy.

[6] The District's Visitors to the School policy.

-5-

without express written permission from building administration will be considered
to be and enforced as a trespass.

That same day, Superintendent Huff instructed Assistant Superintendent Ben Boothe to
contact the Gardner Police Department and file an incident report. The report detailed that Boothe
"wished to trespass [Plaintiff] due to an incident on the evening February 3rd where she was
observed walking through the school taking pictures of classrooms and entering some of the
classrooms." Specifically, the incident involved "a photo shared of room 401 to a group called
'libs of tiktok' on 02/07/2025 at approximately 1026 hours." Boothe stated that Plaintiff "was on
school video taking pictures of the outside of the door to room 401 then entered the room after
taking the photo."

Boothe informed the officer that he would send Plaintiff a certified letter detailing her
trespass from District property and providing the Gardner Police Department case number
documenting the incident. The officer requested a copy of the Letter on February 13, 2025. The
Letter was provided to the officer on February 20, 2025, which was uploaded into evidence.com
along with the associated case number.

Principal Frank Bell was tasked with receiving Plaintiff's requests to be on school property
or attend school events and determine whether they should be granted. Bell informed Plaintiff that
she could attend her son's Senior Night at the high school on February 13, 2025. However, she
was only allowed to access the "PE wing," as "all other parts of our building are off-limits."
Beyond Senior Night, Bell informed Plaintiff that she was required to obtain permission from
"GEHS building administration for permission to be anywhere on our campus."

When Plaintiff asked about whether she could attend her son's Graduation Commencement
Ceremony, Bell responded, "I would hope that with time, you would demonstrate proper civic
behavior to our high school community, and honor the expectations of the letter you received. I

made a good faith effort on your behalf, and advocated for you to be able to attend Thursday's

Senior Night without receiving a request directly from you." He added:

> Candidly, it will take some time and healthy civic behavior on your part, to earn
> the school's trust once again. Your recent choices have created a major disruption
> at Gardner-Edgerton High School. Regretfully, I read nothing in your email
> response that even acknowledged any of that, or that you had any remorse. Even
> so, our hope is that time and good behavior will heal what has been done, and we
> can enjoy a productive parent-school partnership for the betterment of all students.

When Plaintiff again asked about the graduation ceremony, Bell replied, "you do not have

our permission to attend any future GEHS functions, home or away, including our Graduation

Commencement Ceremony." Additionally, Bell informed Plaintiff that she must schedule and

attend all teacher conferences over Zoom or telephone.

## C.     Procedural History

On February 14, 2025, Plaintiff filed suit, asking this Court to enjoin Defendants from

prohibiting her from being on school property without prior written permission. On March 20,

2025, the Court held an evidentiary hearing on Plaintiff's request for a preliminary injunction. On

March 25, 2025, the Court generally granted her request, ordering the injunction to remain in effect

pending trial. On March 28, 2025, Plaintiff filed a Motion to Disqualify defense counsel, Greg

Goheen. The parties filed timely responses and replies. On April 14, 2025, Plaintiff filed her

Amended Complaint. On April 28, 2025, Defendants Chapman, Bell, Huff, and the District filed

Motions to Dismiss. On May 6, 2025, Defendant Boothe filed his Motion to Dismiss. The parties

filed timely responses and replies. The issues, being fully briefed, are now ripe for the Court's

ruling.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[7] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[8] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[9] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[10] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[11] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[12] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[13]

---

[7] Fed. R. Civ. P. 12(b)(6).

[8] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[10] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[11] *Iqbal*, 556 U.S. at 678–79.

[12] *See id.* at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[13] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

### III.    Analysis

#### A.    The Individual Defendants

The Individual Defendants contend that they are entitled to dismissal of all claims against them based on qualified immunity. Qualified immunity is a question of law for the Court's determination.[14] The doctrine shields government officials from personal liability under § 1983 "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"[15] To overcome qualified immunity, Plaintiff must overcome a "heavy two-part burden."[16] Plaintiff must show (1) "that the defendant's actions violated a constitutional or statutory right" and (2) that the right "allegedly violated [was] clearly established at the time of the conduct at issue."[17] The Court will evaluate each of the Individual Defendants' qualified immunity arguments in turn.

##### 1.    Defendant Chapman

Defendant Chapman claims he is entitled to qualified immunity because his statements at the School Board Meeting constituted protected speech under the First Amendment and did not violate any clearly established constitutional right. Plaintiff opposes dismissal, contending that Chapman's statements made immediately before her public comments violated her clearly established First Amendment right to free speech by means of retaliation and viewpoint discrimination. The Court will address each in turn.

---

[14] *Mitchell v. Forsyth*, 472 U.S. 511, 528 n.9 (1985).

[15] *Baptiste v. JC Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[16] *Albright v. Rodriquez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

[17] *Id.*

a.   Retaliation

"To establish a First Amendment retaliation claim, a plaintiff must show that (1) [she] was engaged in constitutionally protected activity, (2) the government's actions caused [her] injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to [her] constitutionally protected conduct."[18] The first and third elements are undisputed. Plaintiff was about to speak at a school board meeting, which is constitutionally protected activity, and Chapman's preemptory comments were motivated by what he thought Plaintiff was going to say. Thus, the only issue the Court must resolve is the "injury" element.

To plausibly allege injury, plaintiff must plead that defendants' actions would chill a person of ordinary firmness.[19] This "standard for evaluating that chilling effect on speech is objective"[20] and "vigorous."[21] "Even in the context of a First Amendment retaliation case, injury to one's reputation is not enough to establish a chilling effect."[22] The Tenth Circuit has held that no injury occurs if a defendant's disparaging statement "carried no penalties."[23]

Plaintiff suffered no penalties for speaking at the board meeting such as a threat of violence, jail time, or a monetary fine.[24] Instead, she claims that when Chapman accused her of getting "pleasure from reading books with questionable content to . . . minors listening," she suffered

---

[18] *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

[19] *Eaton v. Meneley*, 379 F.3d 949, 953 (10th Cir. 2004).

[20] *Id.* at 953.

[21] *Id.* at 956.

[22] *Douglass v. Garden City Cmty. Coll.*, 652 F. Supp. 3d 1329, 1349 (D. Kan. 2023) (citation modified).

[23] *Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trs.*, 235 F.3d 1243, 1248 (10th Cir. 2000); *see also Blume v. Meneley*, 283 F. Supp. 2d 1178, 1188 (D. Kan. 2003) (defamation insufficient to state retaliation claim under § 1983).

[24] *Cf. Moms for Liberty v. Brevard Pub. Sch.*, 118 F.4th 1324, 1330 (11th Cir. 2024).

-10-

slander, shame, and ridicule. If Chapman's statements only served to damage Plaintiff's reputation, then they are insufficient to establish an injury within the meaning of a First Amendment retaliation claim. As such, Chapman did not unconstitutionally retaliate against Plaintiff, and so the Court dismisses this claim against him.

> b.      Viewpoint Discrimination

Viewpoint discrimination is a subset—and a particularly "egregious form"—of content discrimination.[25] It occurs "[w]hen the government targets not subject matter, but particular views taken by speakers on a subject."[26] "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."[27] "Both content- and viewpoint-based speech restrictions are presumptively invalid."[28] "[A] claim of viewpoint discrimination in contravention of the First Amendment requires a plaintiff to show that the defendant acted with a viewpoint-discriminatory purpose."[29] When government officials target speech because of "particular views taken by speakers on a subject," viewpoint discrimination is afoot.[30]

Plaintiff claims that she was targeted by Chapman for reading parts of books contained in the District's curriculum, when others were not. Specifically, she names Erika Sheets, and other individuals associated with the activist group, Moms for Liberty, who have brought complaints before the Board without facing similar treatment. Plaintiff claims that she alone had her microphone muted during her speech, was denied the chance to repeat it after the Board restored

---

[25] *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

[26] *Id.*

[27] *Id.*

[28] *Pahls v. Thomas*, 718 F.3d 1210, 1229 (10th Cir. 2013).

[29] *Id.* at 1230.

[30] *Rosenberger*, 515 U.S. at 829.

-11-

her microphone, her speech was not closed-captioned on the Board's YouTube channel, and others were not subjected to similar targeted opposition without an opportunity to respond before giving their prepared remarks.

Moreover, Plaintiff claims that Chapman's comments and subsequent actions towards her clearly show that he was targeting her based on his opposition to her viewpoint. For example, Chapman prefaced his remarks with the assumption that he knew what Plaintiff would be talking about before characterizing her criticisms as being "entirely disingenuous," "without understanding or discernment," and "damag[ing]." Additionally, Chapman trivialized Plaintiff's concerns about the Board's book review process by accusing Plaintiff of getting "pleasure from reading books with questionable content to this audience where there are minors listening" and seeking the "shock attention that is caused by reading the out of context sexual clips to the minors and adults in the audience." Plaintiff claims that the proximity between Chapman's remarks and the subsequent silencing she experienced establishes that her opinion or perspective was the rationale for the restriction.

Taking the facts in Plaintiff's Complaint as true, the Court agrees that Chapman engaged in viewpoint discrimination against Plaintiff. Although Plaintiff was still able to speak for three minutes, her speech was rendered ineffective because it could not be heard by viewers. Plaintiff's microphone was muted, and closed captioning was unavailable on the District's YouTube page. Moreover, Chapman's remarks demonstrate that he disagreed with Plaintiff's views and, likely due to those views, he subjected Plaintiff to less favorable treatment than other speakers.

Viewpoint discrimination has been a clearly established constitutional violation in the Tenth Circuit for decades.[31] A reasonably competent public official should necessarily know that prefacing a speaker's speech with a pointed attack on her opinions and then muting her microphone throughout her designated speaking time is differential treatment amounting to a First Amendment violation. As such, Chapman is not entitled to qualified immunity, so the Court denies his Motion to Dismiss this claim against him.

2.      *Defendant Huff*

Defendant Huff claims he is entitled to qualified immunity because banning Plaintiff from school property without prior permission did not violate any clearly established constitutional right, as Plaintiff has no constitutional right to be on school property or attend school events. Plaintiff opposes dismissal, contending that Huff's actions violated her clearly established First Amendment right to free speech, association, and religion by means of retaliation. Huff's argument, although facially true,[32] misses the point. "Even if an official's action would be 'unexceptionable if taken on other grounds,' when retaliation against Constitutionally-protected speech is the but-for cause of that action, this retaliation is actionable and 'subject to recovery.'"[33] Here, the protected activity that supports Plaintiff's retaliation claim is exercising her First Amendment right to criticize the school's ideology—not a property interest in the school's facilities.

---

[31] *See Pahls*, 718 F.3d at 1230; *Summum v. City of Ogden*, 297 F.3d 995, 1007 (10th Cir. 2002); *Summum v. Callaghan*, 130 F.3d 906, 917 (10th Cir. 1997).

[32] *See Hirt v. Unified Sch. Dist. No. 287*, 2019 WL 1866321, at *10 (D. Kan. Apr. 24, 2019) (collecting cases), *aff'd sub nom.*, *Clark v. Unified Sch. Dist. No. 287*, 822 F. App'x 706 (10th Cir. 2020).

[33] *Howards v. McLaughlin*, 634 F.3d 1131, 1143 (10th Cir. 2011) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

Plaintiff took pictures of the classroom door, posters displayed on the classroom walls, and books stacked on the classroom bookshelves. Her photos were posted to the Libs of TikTok X account with the caption: "School in Gardner, Kansas (@GEHSBlazers) Strip them of their funding immediately." Libs of TikTok did not notify Plaintiff that it was going to post her photos, and did not consult Plaintiff on what to caption the photos. Thus, by banning Plaintiff from school property and events based on this X post, Huff not only banned Plaintiff for her own speech,[34] but also banned her for others' speech.[35] Following the ban notice, Huff instructed Boothe to file a police report and issue a no-trespassing order, which carried with it legal penalties. This measure constitutes an injury sufficient to chill a person of ordinary firmness from continuing to speak.[36]

Moreover, the ban was substantially motivated as a response to Plaintiff's speech. The Letter makes clear that Plaintiff's conduct—taking pictures later posted to social media—was the reason she was "no longer welcome to be on school district property or attend school events or activities without express written permission from building administration." Despite Huff's arguments that he never denied Plaintiff's request to attend an event, the fact that Plaintiff faced more administrative burdens than other parents because of her unpopular speech constitutes retaliation.

Lastly, the ban was overbroad and not narrowly tailored to address the specific "threat" Plaintiff posed. The ban effectively prevented Plaintiff from speaking at school board meetings,

---

[34] *See Cressman v. Thompson*, 798 F.3d 938, 954 (10th Cir. 2015) (finding that images may fall within the First Amendment's purview as symbolic speech).

[35] *Doe v. Shurtleff*, 628 F.3d 1217, 1222 (10th Cir. 2010) ("First Amendment protections for speech extend fully to communications made through the medium of the internet.") (citing *Reno v. ACLU*, 521 U.S. 844, 870 (1997)).

[36] *See Phelan*, 235 F.3d at 1248; *Hirt*, 2019 WL 1866321, at *15 (citing *Wilson v. Ne. Indep. Sch. Dist.*, 2015 WL 13716013, at *1 (W.D. Tex. Sept. 30, 2015)); *Flores v. Victory Preparatory Acad.*, 411 F. Supp. 3d 1149, 1160 (D. Colo. 2019); *Vollmecke v. Indep. Sch. Dist.*, 753 F. Supp. 3d 792, 809 (W.D. Mo. 2024); *Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1362 (N.D. Ga. 2022) (collecting cases).

-14-

associating with her children and other parents, and attending church services without express written permission from building administration because all these events were held on school property. Generally, incidental burdens on religious practices are constitutional if the regulation is neutral and generally applicable. However, as previously established, the ban was retaliatory—not neutral or generally applicable. But regardless of whether Plaintiff chose to participate in these publicly available activities or whether her requests to participate were granted, requiring her to seek permission, when others were not required to do so, imposes a burden substantially greater than necessary to further the government's interests. This is especially true when Huff has not identified a legitimate governmental interest. As this Court ruled in its last order for injunctive relief,[37] based on the plain language of the school policies cited to justify the ban, Plaintiff did not violate any of those policies. Additionally, even though Huff accused Plaintiff of violating state law, he did not cite any specific law in the Letter. Still, throughout this case, Huff has been unable to articulate how Plaintiff violated any state law. As such, Huff unconstitutionally retaliated against Plaintiff, and violated her First Amendment rights to speech, association, and religion in the process.

It has long been clearly established that the First Amendment bars retaliation for protected speech.[38] Huff banned Plaintiff because he believed her speech (and Libs of TikTok's speech) was "inappropriate, unacceptable[,] and [intolerable]." Finding images posted to a popular social media account offensive is an insufficient reason to strip Plaintiff of her rights to speak, associate, and exercise religion. It is unreasonable for a person acting as Huff did to believe that such conduct

---

[37] *See* Doc. 17.

[38] *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968).

did not infringe upon Plaintiff's First Amendment rights. As such, Huff is not entitled to qualified immunity, so the Court denies his Motion.

    3.    *Defendants Boothe & Bell*

Defendants Boothe and Bell claim that they are entitled to qualified immunity because they neither imposed the ban nor denied Plaintiff's requests to be on school property, and they were not responsible for the allegedly unconstitutional school policies that were used to justify the ban. Plaintiff opposes dismissal, contending that Defendants Boothe and Bell were active decision makers in creating the school's policies and punishments that violated Plaintiff's constitutional rights. But even if they were not decision makers, Plaintiff contends that Defendants Boothe and Bell cannot escape liability by claiming they were merely following the school's orders.

    a.    Defendant Boothe

Defendant Boothe is primarily alleged to have filed a police report, at Huff's direction, to enforce the no trespass order against Plaintiff. Based on the information Boothe provided to the officer in the police report, the Court concludes that Boothe assisted Huff in retaliating against Plaintiff due to her opposing viewpoint. Specifically, Boothe told the officer that "there was a photo shared of room 401 to a group called 'libs of tiktok' on 02/07/2025 at approximately 1026 hours." He stated Plaintiff "was on school video taking pictures of the outside of the door to room 401 then entered the room after taking the photo." Specifically, Boothe "wished to trespass [Plaintiff] from all USD231 properties due the incident and previous incidents involving [Plaintiff]." From this information, it is clear that Boothe's reason for filing a trespass report was substantially motivated as a response to Plaintiff's constitutionally protected speech. As previously stated, the legal penalties that flow from a violation such as trespass, constitute an action that would

chill a person of ordinary firmness from continuing to engage in that activity.[39] Therefore, because participation in retaliation is a clearly established constitutional violation, Boothe is not entitled to qualified immunity, so the Court denies his Motion.

b.      Defendant Bell

Defendant Bell is primarily alleged to have been assigned the responsibility of receiving Plaintiff's requests to be on school property or attend school events and determine whether they should be granted. However, Bell's writings to Plaintiff demonstrate retaliation. For example, he reiterated that Plaintiff was "not to attend any events, home or away." He explained that this was because Plaintiff needed to "earn the school's trust once again." Specifically, Bell cited Plaintiff's "recent choices"—i.e., the Libs of TikTok incident—as having "created a major disruption at Gardner-Edgerton High School" that he hopes Plaintiff will acknowledge with remorse or at least "heal what has been done" through "time and good behavior." Following this conversation, Plaintiff asked if she could attend her son's Graduation Commencement Ceremony. Bell responded, "Regarding our Graduation Commencement Ceremony, I would hope that with time, you would demonstrate proper civic behavior to our high school community, and honor the expectations of the letter you received." When Plaintiff again asked about the graduation ceremony, Bell stated, "you do not have our permission to attend any future GEHS functions, home or away, including our Graduation Commencement Ceremony."

---

[39] *See Douglass*, 543 F. Supp. 3d at 1056; *McCook v. Springer Sch. Dist.*, 44 F. App'x 896, 905 (10th Cir. 2002) (finding a prohibition on attending any school functions or from trespassing onto any school property sufficiently chills a person of ordinary firmness from continuing to engage in protected speech); *see also Rinne v. Camden Cnty.*, 65 F.4th 378, 384 (8th Cir. 2023) ("We have distinguished between non-actionable retaliatory measures that produce only embarrassment, humiliation and emotional distress, and steps that engage the punitive machinery of government to impose concrete consequences in retaliation for speaking out against the government. A prohibition on entering county property is a concrete consequence that would objectively chill a person of ordinary firmness from criticizing county commissioners. Although the county did not prosecute [the plaintiff] for violating the ban, the prohibition itself and the threat of enforcement are sufficient to produce a chilling effect on speech." (citation modified)).

Bell's statements are a clear indication of retaliation. Plaintiff's, or rather Libs of TikTok's, social media post was constitutionally protected speech. Blanketly banning a parent from all school property and events—both home and away—absent approval from the school principal would chill a person of ordinary firmness from continuing to engage in that activity. This is especially true when the principal has denied the parent's request to attend important events in the life of her son, like graduation. Lastly, the ban on Plaintiff's ability to attend events was substantially motivated as a response to her speech. As such, because retaliation against Plaintiff for exercising her constitutional rights is a clearly established violation, Bell is not entitled to qualified immunity, so the Court denies his Motion.

## B.   Defendant Unified School District No. 231

The District seeks dismissal of Plaintiff's claims against it on three bases: (1) lack of standing, (2) barred by the statute of limitations, and (3) failure to state a claim. The Court will address each argument in turn.

### 1.   Lack of Standing

The District claims that Plaintiff lacks standing because she fails to plead any actual injury. It argues that either Plaintiff never sought permission to attend certain events or was granted permission for every event she requested. Thus, the District contends that Plaintiff was never actually deprived of her rights to associate with her children or other parents, exercise religion at church services held on school property, or speak at board meetings.

The Court disagrees with the District's argument. The District overlooks that standing does not require a plaintiff to have been wholly deprived of a right for all time;[40] rather, it requires a

---

[40] *West Virginia v. EPA*, 597 U.S. 697, 719 (2022); *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011).

concrete injury that is actual or imminent.[41] Plaintiff's injury was real and ongoing at the time she filed suit in January. At that point, she was under an active no-trespass directive that prohibited her from entering school property or attending events without prior written permission. The District's later decision to allow her to attend some events—especially after litigation began—does not erase the injury caused by the ban or render it constitutional.[42] Likewise, occasionally granting her permission did not eliminate the harm of the prior restraint, as she still had to seek approval each time when others similarly situated did not. Moreover, Plaintiff was able to attend events like her son's graduation in May because the Court enjoined the District from enforcing the ban for that event in March. There is no indication that the District would have accommodated Plaintiff's rights voluntarily; rather, without judicial intervention, Plaintiff likely would have been excluded from an event that other members of the public were not. As such, the Court rejects the District's standing argument.

### 2.    Statute of Limitations

Next, the District argues that any claim premised on events that occurred prior to February 14, 2023, are barred by the applicable statute of limitations. The Court agrees. Because § 1983 does not have a federal statute of limitations, the 2-year statute of limitations found at K.S.A. § 60-513(a)(4) applies to this lawsuit, which was commenced on February 14, 2025. However, the Court does not find that the single interaction mentioned in the Complaint between Plaintiff and Bell occurring on October 12, 2022, is foundational to any of Plaintiff's claims. If anything, their

---

[41] *Tarrant Reg'l Water Dist. v. Herrmann*, 656 F.3d 1222, 1248 (10th Cir. 2011) (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

[42] *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) ("[I]nterim developments that moot a claim for prospective relief do not necessarily moot a claim for damages. And the mootness of a plaintiff's claim for injunctive relief is not necessarily dispositive regarding the mootness of his claim for a declaratory judgment." (citation modified)).

-19-

interaction provided mere background information. But to the extent that Plaintiff does try to use this interaction to form the basis of some claim, it is barred by the statute of limitations.

### 3. Failure to State a Claim

The District contends that Plaintiff has failed to state a claim for the following causes of action: (1) equal protection, (2) First Amendment violations, and (3) due process. The Court will address each in turn.

#### a. Equal Protection

First, the District argues that Plaintiff does not assert a viable equal protection claim separate from her First Amendment claims. Plaintiff claims her equal protection rights have been violated by characterizing herself as a "class of one"—all other parents were permitted to attend their children's events without asking for permission, but she was not.

When an individual faces retaliation, "the proper claim is not an equal protection claim brought in federal court, but a claim under the applicable anti-retaliation law brought in the forum designated to redress such harm."[43] Otherwise, "every claim of unlawful retaliation against a government [official], whether brought under state or federal law, could be transformed into an equal protection claim simply by defining the relevant class as consisting of those . . . who challenged the government's unlawful . . . policies."[44] Because Plaintiff's equal protection claim is duplicative of her First Amendment retaliation claim, the Court grants the District's Motion to Dismiss this claim against it.

---

[43] *Teigen v. Renfrow*, 511 F.3d 1072, 1086 (10th Cir. 2007).

[44] *Id.*

b.      First Amendment Violations

As a Kansas school district, the District seeks dismissal, arguing that it can only be held liable under § 1983 for policies or customs established by its final policymaker—the Board of Education. The District contends that because Plaintiff's claims are based solely on actions by individual employees or a single board member, and not on official board policies, it cannot be held liable for those claims. Plaintiff claims that the individuals who injured her were able to do so by enforcing unconstitutional District policies.

Under § 1983, municipalities, such as the District, may be subject to limited liability for a violation of a plaintiff's rights; this is commonly referred to as *Monell* liability. To state a claim for *Monell* liability, a plaintiff must allege three elements: "(1) an official policy or custom, (2) causation, and (3) deliberate indifference."[45] Here, the first two elements are undisputed. Huff used several official Board Policies—namely, KGB, KBC, KGD, KGDA, KFD, and KM—to justify retaliating against Plaintiff. Thus, the Court must resolve whether the Board, as the District's "final policy maker,"[46] acted with "deliberate indifference to the risk of constitutional violations."[47]

Neither party disputes the facial constitutionality of the Board Policies. Rather, the question before the Court is whether the Board can be held liable when its subordinates apply its policies in an unconstitutional manner. To impose liability, the plaintiff must meet "rigorous standards of culpability and causation . . . to ensure that the municipality is not held liable solely for the actions of its employee."[48] Specifically, the plaintiff must demonstrate that the policy was the "moving

---

[45] *Crowson v. Washington Cnty., Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020).

[46] *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 818 (10th Cir. 1990) ("[T]he board . . . is the final decisionmaking authority under state law.").

[47] *Bell v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 2004 WL 624972, at *12 (D. Kan. Mar. 29, 2004).

[48] *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997).

-21-

force" behind the constitutional violation.[49] This requires alleging that the school district had actual or constructive notice that its policy or its application was substantially certain to result in constitutional violations and consciously disregarded this risk.[50] Notice can be established through a pattern of similar constitutional violations or if the violation was a "highly predictable" or "plainly obvious" consequence of the policy's application.[51] However, isolated incidents of unconstitutional application, without evidence of a broader custom or deliberate indifference, are generally insufficient to establish liability.[52]

Here, Plaintiff has not alleged facts showing that it was "highly predictable" or "plainly obvious" that the Board's subordinates, such as the Superintendent or Principal, would apply its policies to Plaintiff in an unconstitutional manner. For instance, some of the policies cited by Huff dealt with requirements for visitors to wear badges, prohibitions on parents carrying firearms into school facilities, and banning bullying or threatening behavior while on school premises. In this case, none of these policies are even patently relevant to Plaintiff's conduct.[53] Instead, it seems like the school officials selected these policies merely as a pretext to retaliate against Plaintiff, rather than based on any legitimate conduct violating those rules. Moreover, Plaintiff has not cited a pattern of similar constitutional violations that should have put the Board on notice. Thus, given that such a grave misapplication of these policies is not something the Board could have

---

[49] *Id.* at 404.

[50] *Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022).

[51] *Id.* (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).

[52] *Medcalf v. Kansas*, 626 F. Supp. 1179, 1191 (D. Kan. 1986) (citing *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977)); *see also Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994) ("[I]solated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference.").

[53] Even if Plaintiff's Libs of Tiktok incident could somehow constitute bullying, it did not occur on school property.

anticipated, the Court finds that the Board was not deliberately indifferent. As such, the District is not liable to Plaintiff for her First Amendment violations, so the Court dismisses these claims against it.

        c.      Due Process

Next, the District seeks dismissal of Plaintiff's due process claim, arguing that she failed to allege a constitutionally protected liberty or property interest that was deprived by governmental action. Plaintiff claims that her freedom of speech is a protected liberty interest and depriving her of a hearing, or the ability to appeal the decision, violated her due process rights. Again, Plaintiff can properly state a claim for *Monell* liability by alleging three elements: "(1) an official policy or custom, (2) causation, and (3) deliberate indifference."[54]

Despite the District's assertions, nothing in K.S.A. § 72-1138 provides for a formal review process—and asserting that it does is disingenuous. However, the District does provide a district-wide policy or custom that facially appears to provide an appeal process, although it provides conflicting information. This takes the form of a chart outlining the hierarchy for parental complaints. The chart identifies the Board of Education President as the ultimate authority, but the accompanying text directs parents to "call or write the Superintendent, Dr. Brian Huff" as the final authority. Clearly, enacting a policy that requires Plaintiff to appeal to the same official who imposed the alleged constitutional deprivation deprives her of due process. Thus, the only question before this Court is whether Plaintiff alleges that the District acted with "deliberate indifference to the risk of constitutional violations."

Plaintiff has not alleged that the District, when adopting its complaint and appeal policies, anticipated, and much less intended, that the very officials entrusted with handling parental

---

[54] *Crowson*, 983 F.3d at 1184.

concerns—such as the Superintendent or Principal—would themselves violate a parent's constitutional rights. Deliberate indifference requires more than mere negligence or poor policy drafting; rather, it requires knowledge of a substantial risk of constitutional violations coupled with a failure to take reasonable measures to prevent them.[55] Although in hindsight the District's complaint and appeal policies could have accounted for more effective safeguards, they nonetheless established a centralized process for addressing parental concerns.[56] In this case, failing to account for the possibility that those charged with enforcing policies would simultaneously be the source of constitutional harm does not amount to deliberate indifference. As such, the Court dismisses Plaintiff's due process claims against the District.

## C.      Motion to Disqualify

Plaintiff asks the Court to disqualify Defendants' attorney, Greg Goheen, alleging that he was either part of the investigation, a decision maker, or a business consultant who had personal relationships with key decision makers in which he could observe, direct, and guide, how Superintendent Huff would violate Plaintiff's constitutional rights. Plaintiff claims that Kansas Rule of Professional Conduct 3.7 disqualifies Mr. Goheen from participating in this case during trial but also prior to trial. The Court disagrees. Rule 3.7 specifically prohibits lawyers from acting as an advocate *at trial*. This case is in the preliminary stages, and discovery has not yet commenced. Without further discovery, it is unclear whether Defendant Huff's communications with counsel will be relevant or admissible at trial, or whether Mr. Goheen will be called as a

---

[55] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) ("The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm" (further quotations omitted)).

[56] *Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1122 (10th Cir. 2008) (citing *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 174 (1st Cir. 2007) ("In hindsight, there may be other and better avenues that the [district] could have explored . . . [b]ut [the law] does not require . . . perfect solutions.").

witness by either party in connection with those communications. In sum, Plaintiff's Motion is, at best, premature. For this reason, the Court denies her motion without prejudice, and she may refile closer to trial.

**IT IS THEREFORE ORDERED** that Defendant Greg Chapman's Motion to Dismiss (Doc. 35) is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Defendant Brian Huff's Motion to Dismiss (Doc. 39) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Ben Boothe's Motion to Dismiss (Doc. 46) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Frank Bell's Motion to Dismiss (Doc. 37) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Gardner-Edgerton Unified School District No. 231's Motion to Dismiss (Doc. 33) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Disqualify Greg Goheen (Doc. 19) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 14th day of August, 2025.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE